**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile:  (619) 564-6665
***Attorneys for Plaintiff and the Proposed Classes***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MOLLICONE, on behalf of herself, all others similarly situated, and the general public,<br><br>                    Plaintiff,<br><br>v.<br><br>UNIVERSAL HANDICRAFT, INC., d/b/a "Deep Sea Cosmetics" d/b/a "Adore Organic Innovations;" and SHAY SABAG SEGEV,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>Demand for Jury Trial</u> |

Plaintiff LISA MOLLICONE ("Plaintiff"), individually and on behalf of herself, all others similarly situated, and the general public, brings this action against UNIVERSAL HANDICRAFT, INC. doing business as "Deep Sea Cosmetics" doing business as "Adore Cosmetic Innovations" ("Adore") and SHAY SABAG SEGEV, individually and in his capacity as the founder and president of Adore ("Defendant Segev") (collectively the "Defendants"). The factual contentions in this complaint have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Plaintiff intends for the exhibits filed with this complaint to become a part of this complaint for all purposes. Plaintiff alleges the following on information, belief, or by investigation of her counsel, formed after an inquiry reasonable under the circumstances, as set forth in the preceding paragraphs:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff is asserting claims under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA").

2.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff is domiciled in New Jersey, Defendants are domiciled in Florida, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act of 2005 or "CAFA") because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one class member is a citizen of a different state than one of the Defendants.

4.     This Court has personal jurisdiction over the Defendants because each defendant has certain minimum contacts with this forum and the assertion of jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice. Each of the Defendants have purposefully availed themselves to the laws and benefits of conducting business with residents of this forum and each of the Defendants have conducted substantial

CLASS ACTION COMPLAINT

business in this forum. Moreover, the exercise of personal jurisdiction is proper pursuant to the Constitution and laws of the United States as well as California's "long-arm" statute, California Code of Civil Procedure § 410.10.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district because Plaintiff purchased the products at issue in this action from Defendants' retail store that is located within this judicial district at 332 Rodeo Drive, Beverly Hills, California 90210.

## NATURE OF THE ACTION

6.      Defendants manufacture, distribute, market, advertise, and sell a line of super premium cosmetics under their "Adore Organic Innovation" Product line.  According to Defendants, "Adore Organic Innovation uses the highest concentration of its _proven_ Plant Stem Cell formula, combined with a blend of vitamins, essential oils, and organic plant extracts, to enable your skin's own stem cells to renew and slow the aging process.  **It's the most advanced breakthrough in anti-aging skin care today. And it's yours exclusively to adore.**" (emphasis in original).

7.      Included in the "Adore Organic Innovation" Product line are the Adore CELLMAX Products. The Adore CELLMAX Products are touted as a "remarkable formula" that are "proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture."

8.      The CELLMAX Products include the "CELLMAX Redefining Facial Cream" ("Cream"), the "CELLMAX Elite Facial Serum" ("Serum"), and the "CELLMAX Superior Supplement Facial Thermal Mask" ("Thermal Mask") (collectively the "CELLMAX Products"). The CELLMAX Products are also sold together in a single kit called the "CELLMAX Kit." _See_ Screenshots of Defendants' Website attached hereto as **Exhibit 1**.

2

CLASS ACTION COMPLAINT



9.     Defendants market and sell at least twenty-two (22) cosmetics products under is "Adore Organic Innovation" Product Line that are substantially similar to the ADORE CELLMAX Products because they contain the same types of "plant stem cells" and make almost identical labeling claims that tout the anti-aging benefits of the Products by way of the purported "plant stem cells." The CELLMAX Products and the substantially similar products, which are more fully defined in this complaint, are collectively referred to as the "Adore Products."

10.     Defendants sell the Adore Products direct-to-consumers through their brick and mortar retail locations and through their website, http://www.adorecosmetics.com/.

11.     Defendants claim through a comprehensive marketing campaign that their "exclusive Plant Stem Cell Formula" is "proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture."

12.     Defendants' representations, however, are false and misleading. The Adore Products do not "halt the aging process" nor are the Adore Products "Proven to restore youthful appearance." Moreover, the plant stem cells within the Adore Products are not "exclusive." Instead, the "plant stem cells" in the Adore Products are really a proprietary ingredient called PhytoCellTec™ that is manufactured by Mibelle Biochemistry of Switzerland. PhytoCellTec™ is also an ingredient in several other cosmetics products, many of which are far less expensive than the super-premium Adore Products. *See* **Exhibit 2**.

13.     Indeed, the purported "plant stem cells" contained in the Adore Products do not provide any type of anti-aging benefits because Mibelle  admits that its PhytoCellTec™ *Malus Domestica*  "is a patented liposomal preparation of apple stem cells derived from the 'Uttwiler Spätlauber', a rare Swiss apple variety." *See* Ex. 2.

14.     All credible evidence shows that Defendants' claims about plant stem cells in the Adore Products and their ability to interact with human skin stem cells to provide anti-aging benefits are false and deceptive. Moreover, Dr. Daniel Schmid, the research director of Mibelle, has actually ***admitted*** that "[t]he anti-ageing benefit for the skin after topical application could not be confirmed in a clinical trial." *See Could the extract from a rare Swiss apple REALLY get rid of your wrinkles?* THE DAILY MAIL (Nov. 2009), *attached hereto as* **Exhibit 3**.

15.     Despite this statement from the research director of the company that manufactures the "plant stem cells" contained in the Adore Products, Defendants continue to market the Adore Products as containing a "***proven*** Plant Stem Cell formula...to enable your skin's own stem cells to renew and slow the aging process." *See* Ex. 1 (emphasis added).

16.     In the liposomal preparation employed by Mibelle, intact plant stem cells simply no longer exist.  The plant stem cells are essentially "pulverized" by "homogenization" — application of mechanical force, such as with a rotary blender, to create a suspension that

4

Mibelle describes as a "cell broth." Various ingredients are then added to this "cell broth," which results in only a mere "essence" of the original plant stem cells. According to Mabelle's patent application for PhytoCellTec, "the great advantage of this method is its simple and low-cost application." Moreover, the patent application itself concedes that "use for stimulation and protection of skin stem cells is not envisaged." *See* Patent Application for PhytoCellTec *attached hereto as* **Exhibit 4**.

17.    In short, there is no possible way that the so-called "plant stem cells" in the Adore Products can "enable your skin's own stem cells to renew and slow the aging process." Nonetheless, Defendants charge a super-premium price for what is really a "simple and low-cost" cream that it describes as "the most advanced breakthrough in anti-aging skin care today."

18.    Worse yet, the Adore Products are being sold unlawfully. The United States Food and Drug Administration has warned the marketers of a similar cosmetics products containing PhytoCellTec that their products were considered to be an "Unapproved New Drug" in violation of the Federal Food, Drug and Cosmetics Act. *See* FDA Warning Letter to Crescent Health Center, Inc., WL #28-16 (April 20, 2016), *attached hereto as* **Exhibit 5;** FDA Warning Letter to Jaba Labs, LLC, (March 1, 2011), *attached hereto as* **Exhibit 6.**

19.    The two FDA Warning Letters show that the Adore Products are also promoted for uses that cause the Products to be "Unapproved New Drugs" under sections 201(g)(1)(B) and/or 201(g)(1)(C) of the FDCA [21 U.S.C. § 321(g)(1)(B) and/or 321(g)(1)(C)] because the Products are intended for use in the cure, mitigation, treatment, or prevention of disease and/or are intended to affect the structure or any function of the human body.

20.    Plaintiff Mollicone was misled by Defendants advertising and labeling of the Adore Products and would have not purchased the products (or would have only been willing to pay significantly less for the Products) if she would have known that the Products do not provide the touted anti-aging benefits.

21.    Plaintiff Mollicone now seeks redress on behalf of herself and all other similarly situated consumers.  Plaintiff Mollicone seeks to represent the consumer classes, or alternate subclasses, that are more fully defined in this complaint. Plaintiff Mollicone is alleging intentional fraud and deceit, fraud by omission, negligent misrepresentations violations of California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, California's False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500 *et seq.*, California's Consumers Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et seq.*, Breach of Express Warranties under the laws of ten jurisdictions, Breach of Implied Warranties, violations of the New Jersey Consumer Fraud Act, and violations of the Federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* Plaintiff Mollicone also seeks rescission of all purchase contracts for the Adore Products, restitution, and injunctive and declaratory relief.

## **PARTIES**

22.    Plaintiff Lisa Mollicone is a resident of New Jersey who purchased various Adore Products from Defendants' retail location in Los Angeles, California, as further alleged in this Complaint.

23.    Defendant Universal Handicraft, Inc. is a for-profit corporation organized under the laws of Florida that maintains its principal place of business at 1400 Alton Road, Suite 201, Miami Beach, Florida. *See* **Exhibit 7**. At all times mentioned in this complaint, Defendant Universal was a seller, distributor, manufacturer, and advertiser of the Adore Products.

24.    Defendant Shay Sabag Segev is an individual residing in the state of Florida. Defendant Segev is the President of Defendant Universal Handicraft, Inc. and personally participated in, directed, and controlled the sales, distribution, manufacturing, and advertising of the Adore Products. According to the Articles of Incorporation for Universal Handicraft, Inc., Defendant Segev is the incorporator of Defendant Universal and also serves as one of its directors. *See* Universal Handicraft Inc.'s Articles of Incorporation attached hereto as **Exhibit 8**.

# FACTUAL ALLEGATIONS

### A.   Defendants Capitalize on the Anti-Aging Products Market

25.   Since 2001, Defendant Universal has manufactured and sold various cosmetic and skin care products. The company made a name for itself by developing products that utilize or contain, *inter alia*, natural Dead Sea minerals combined with complex peptides. In 2012, Universal developed a new and innovative line of products utilizing plant stem cell technology. *See* Emily Lambert, *The Deep Sea and Its Many Treasures,* SPECIALTY RETAIL REPORT (Fall 2010), *attached hereto as* **Exhibit 9**.

26.    On or about June 28, 2012, Defendants launched this new line of products under the trademark ADORE ORGANIC INNOVATION. On or about October 29, 2012, Universal filed a trademark application with the U.S. Patent & Trademark Office ("USPTO") for the trademark ADORE ORGANIC INNOVATION. *See* Trademark Application for "Adore Organic Innovation," *attached hereto as* **Exhibit 10.**

27.   "Adore Cosmetics is a leading purveyor of organic skin care products designed to harness the power of plant stem cells, botanical extracts and proven leading-edge anti-aging ingredients to restore the natural, youthful radiance of skin."

28.   Products bearing the ADORE ORGANIC INNOVATION are sold through kiosks, on-line through the www.AdoreCosmetics.com website, and through retail stores dedicated to ADORE ORGANIC INNOVATION products, including self-branded stores in shopping malls operating under the mark ADORE ORGANIC INNOVATION, such as the one depicted below:

CLASS ACTION COMPLAINT



29.     Defendant Segev has been called "The man behind it all" who started selling cosmetics products from a specialty retail kiosk at the Broward Mall in Plantation, Florida. "With wholesaling in mind, in 2004, Sabag returned to look for a factory and a lab that would be able to bring the most innovative high-end line of cosmetics to the market. His intention was to create cutting-edge Dead Sea cosmetics using the best technology and formulations available. Once his factory was secured, and his line was ready to market, retailers quickly jumped on board. Carts began to sprout up in Florida and spread throughout the East Coast, eventually making their way throughout the entire United States." "By the end of 2004, Deep Sea had approximately 60 carts along the East Coast retailing their products. By the second year, that number jumped to 150. And [by 2010], during the bustling holiday season, Deep Sea carts numbered 450. The product line has also grown, from 12 products to approximately 60 by Deep Sea Cosmetics Laboratories. Retailers carry an average of 40 different products on their units." *See* Ex. 9.

## B. Defendants' False and Misleading Marketing of the Adore Stem Cell Products

30.    Defendants has engaged in a uniform marketing and advertising campaign designed to convince consumers that its Adore Organic Innovation Products are scientifically and clinically proven to provide consumers with dramatic anti-aging results, "Representing the most advanced #OrganicBased #AntiAging #SkinCare #StemCell #Technology," according to the Adore Instagram page.



31.    These false and misleading statements are disseminated in advertising, marketing, and promotional materials designed to induce consumers to purchase Stem Cell Products through the internet, through specialty retailer cosmetic carts in shopping malls, and at Defendants' various Adore retail locations.

32.    Plaintiff alleges that Defendants maintain Adore Retail Locations in approximately 24 U.S. Cities, including "Rodeo Drive Beverly Hills, California," Santa Barbara, California, San Francisco, California, and Los Angeles California. *See* Press Release, *Adore Cosmetics Opens New Store in Boston/Cambridge Area* (July 1, 2016), *attached hereto as* **Exhibit 11**.

33.    On Defendants' website, www.adorecosmetics.com, Defendants make numerous anti-aging claims, purportedly backed by exhaustive scientific research. According to the Adore Website, "Adore Cosmetic's research teams have discovered that stem cells harvested from organic produce—which is generally richer in nutrients than mass-harvested

9

fruits and vegetables found in most supermarkets—have profound impact on our skin. Using our patented plant stem cell formula, Adore Cosmetics products take advantage of the epigenetic factors of resilient plant stem cells. In turn, this enables your skin's own stem cells to self-renew while slowing down the aging process. Stem cells have shown great potential to treat critical conditions like Alzheimer's and Parkinson's disease. Adore Cosmetics uses the same type of technology for beauty—using stem cells found in organic fruits and vegetables." *See* Screen Capture of Defendants' Website, *attached hereto as* **Exhibit 12**.

34.     Moreover, according to the Adore Website, "Adore Cosmetic's research team kicked off their skin studies by knowing that stem cells account for just 2% to 7% of your skin's total cells…yet they're responsible for ALL of your skin's ability to heal itself. As time passes and environmental damage mounts, these stem cells lose effectiveness—and skin loses its vitality. Scientists from Adore Cosmetics reviewed independent research that pointed out that plants also have stem cells…and that some fruit stem cells act similarly to human stem cells. The team saw the potential of applying these plant stem cells to protect human skin cells." *See* Ex. 12.

35.     Next, according to the Adore Website, "Adore Cosmetic's researchers started experimenting by applying an extract of these organic plant cells to ethically collected human skin stem cells and then exposing them to UV light. They noticed that the skin cells experienced only a small loss of vitality—while half of those with no extract died. Adore Cosmetic's scientists also tested human skin cells for premature aging due to cellular DNA damage. While the cells incubated with the extract experienced a neutralization of the negative effects and increased their growth rate, the cells that weren't treated with the extract experienced a decrease in cellular growth." *See* Ex. 12.

36.     The anti-aging effects of the Adore Products, according to Defendants,  were then validated in a clinical trial (hereinafter the "Adore Clinical Trial") when "Adore Cosmetics researchers later observed the same protective effect when they applied a cream containing the extract to the crow's feet area of clinical trial volunteers. Four weeks later, wrinkle depth was reduced by as much as 15%.....***Now Adore Cosmetics brings the anti-***

10

*aging properties of this breakthrough to you in a luxurious line of skin care products*." *See* **Exhibit 13**.

37.    According to Defendants, "A few simple steps will help you use Adore Cosmetics to put these plant stem cells to work to defend your skin against the effects of aging and sunlight. Adore Cosmetics products have a specially calibrated concentration of plant stem cell formula available, along with a rich blend of vitamins, essential oils, organic flower extracts and organic vegetable protein. By blending plant cell power with proven nutrients for the skin, the Adore Cosmetics skin care line restores healthy-looking skin by:"

- "Protecting your skin's own stem cells, the key to its regenerative ability"
- "Preventing UV stress and environmental damage"
- "Delaying skin aging processes"
- "Promoting vitality and longevity of skin stem cells."

38.    Finally, Defendants claim, "**Adore Cosmetics represents the most advanced breakthrough in anti-aging found in the beauty industry today—*and it's yours exclusively to adore*.**"

39.    Defendants also advertise and market the Adore Products on social media through YouTube videos,  posts on Facebook, tweets on Twitter, and Pins on Pinterest. Defendants YouTube videos further tout the Adore products as being backed by scientific research.



CLASS ACTION COMPLAINT



40.     Defendants' social media pages also link to websites that further boast about the purported stem cell ingredients in the products. For example, "AdoreCosmeticsHowyouse.com displays instructional videos to help Adore Cosmetics customers properly use the products so as to obtain maximum benefit. It also includes product overviews, video tours of Adore Cosmetics stores and reviews of products from beauty bloggers.

**C. How the Plant Stem Cells in the Adore Products Work According to Defendants.**

41.     In an effort to further promote the science behind the Adore Products, Defendants have published and distributed the "Adore Organic Innovation Science- Stem Cell Technology" Brochure (the "Adore Science Brochure").   This publication is available for download from Defendants' website and is attached hereto as **Exhibit 13**.

CLASS ACTION COMPLAINT



42.     According to the Adore Science Brochure, "Like humans, every plant has stem cells. But unlike humans, every plant cell has the potential to turn back into a stem cell and grow into an entirely new plant. If a plant is wounded, it forms what's known as callus tissue, in which normal cells become stem cells, which act to heal the wound. This is common in plants but not possible in humans. Researchers have long been interested in plants' ability to heal themselves via callus tissue, and even more so, certain plants' remarkable abilities to stay fresh long after being harvested and to protect themselves from prolonged exposure to UV rays that are harmful to living tissue. The question was, could these potent plant stem cells be used to protect human skin stem cells? The answer is yes." *See* Ex. 13.

43.     Defendants reach this definitive "yes" answer because "Researchers discovered that plant stem cells contain epigenetic factors similar to those of adult human stem cells.

CLASS ACTION COMPLAINT

Applied in the right way, plant stem cells have a positive impact on the vitality of skin stem cells and their proper functioning. *By growing callus cells in selected plant tissue under special conditions*, researchers have created a new biotechnology that generates plant stem cells that safely help protect human skin stem cells from chronological aging, UV stress and other environmental damage. We call this new biotechnology Plant Stem Cell formula." *See* Ex. 13 (emphasis added).

44.     Furthermore, according to Defendants, "The development of a new test method, called 'progenitor cell targeting,' made it possible to isolate stem cells, which look the same as other skin cells, from the human epidermis for test purposes. *Using this method, these epidermal stem cells are grown in Petri dishes*. During this process, each healthy stem cell divides, forming a colony of cells, which is visible to the naked eye and can be counted. Stem cells that have aged and are weakened do not die, but they no longer form colonies. Researchers were thus able to prove that using plant stem cells increases the longevity and the vitality of human skin stem cells. Extensive studies have shown that Plant Stem Cell formula increases the vitality and efficiency of all essential skin cells and improves skin's resistance." Ex. 13 (emphasis added).

45.     The Adore Science Brochure also notes that stem cells within the Adore Products are a propriety blend of plant stem cells called "PhytoCellTec[TM]" that is manufactured by the Mibelle Biochemistry Group of Switzerland. *See* Ex. 13.

**D. The Adore Products Contain the Mibelle PhytoCellTec™ Patented Active Ingredient**

46.     According to the Mibelle Website, "Mibelle Biochemistry Switzerland designs and develops unique, high-quality actives for the beauty industry which are based on naturally derived compounds and extensive scientific expertise."

47.     Among its "unique, high-quality actives for the beauty industry" is the "PhytoCellTec[TM] *Malus Domestica* active ingredient that is contained in the Adore Products.

48.     Mibelle claims that "PhytoCellTec Malus Domestica is a patented liposomal preparation of apple stem cells derived from the 'Uttwiler Spätlauber', a rare Swiss apple

14

variety. These apple stem cells are rich in epigenetic factors and metabolites, which ensures the longevity of skin cells. PhytoCellTec™ Malus Domestica has been shown to protect skin stem cells while also delaying the senescence of hair follicles. PhytoCellTec™ Malus Domestica succeeds in delivering a revolutionary anti-aging performance for real rejuvenation." *See* Ex. 2.

49.     Moreover, "PhytoCellTec™ Malus Domestica was the first ingredient based on plant stem cells on the cosmetic market. The topical use of PhytoCellTec™ Malus Domestica is patented in the USA (US 9,155,916 B2 / US 8,580,320 B2) and in Korea (10-1470632)."

**E.**     **Affirmative Evidence Shows that Defendants' Advertising of the Adore Products is Provably False and Likely to Mislead Reasonable Consumers**

1. A Mibelle Researcher Admits that the Efficacy of PhytoCellTec Plant Stem Cells "Could Not be Confirmed in a Clinical Trial."

50.     An article in *The Daily Mail* titled "Could the extract from a rare Swiss apple REALLY get rid of your wrinkles?" featured an interview with "Dr. Daniel Schmid, research director of Mibelle Biochemistry, the Swiss lab which developed PhytoCellTec Malus Domestica." He "insists that his study shows his apple stem cell extracts have been 'shown to improve the maintenance of the stem cells characteristics of epidermal stem cells.'" However, "he admits: *'The anti-ageing benefit for the skin after topical application could not be confirmed in a clinical trial*.'" *See* Ex. 3.

51.     Therefore, Defendants' claims that the Adore Products are "Proven" to provide anti-aging benefits are literally false- as was admitted by the research director at the company that manufactures the Plant Stem Cell ingredient in the Adore Products.

2. Leading Scientists Agree that Plant Stem Cells Like in the Adore Products cannot Provide Anti-Aging Benefits

52.     As noted by S. Jay Olshansky, a distinguished professor at the University of Illinois-Chicago's School of Public Health who has written extensively about aging, "If someone is promising you today that you can slow, stop or reverse aging, they're likely trying

15

hard to separate you from your money." *See* David Carey, *Boomers will be Spending Billions to Counter Aging*, USA Today (Aug. 22, 2011), *attached hereto as* **Exhibit 14**.

53.    Professor Liam Dolan, the "Sheradian Professor of Botany at Oxford University, who specialises in studying plant cells," reviewed the advertising claims for the PhytoCellTec ingredient and concluded,  "'I don't see how plant stem cells could interact with human stem cells in this way." *See* Ex. 3.

54.    Paolo U. Giacomoni, who was formerly the executive director of research at Estee Lauder, and who received a Laurea in Atomic Physics from the University of Milan and a Ph.D. in Biochemistry from the University of Paris, is critical of the role of stem cells in cosmetics. "Stem cell technology is still far from biomedical applications, let alone cosmetic ones," states Giacomoni. *See Healing Beauty: More biotechnology cosmetic products that claim drug-like properties reach the market,* EMBO Reports (Nov. 2008), *attached hereto as* **Exhibit 15**.

55.    "Stem cells that are in contact with skin are not really alive anymore," said Margaret Foster Riley, a law professor and expert on food and drug law at the University of Virginia. "So I don't really see how a stem cell product is working on the skin. I suppose some of them may actually work in a way that cosmetics work otherwise, because of moisturizing capability. But it's not stem cell capability that's working there to the degree we know how stem cells work." *See Stem cell lotions: Cutting edge or pure hype?* USA Today (Sept. 1, 2015), *attached hereto as* **Exhibit 16**.

56.    "'Potions and lotions may in fact work really well, but at the end of the day, let's be data-driven, so the consumer doesn't have to worry about whether they think it might work,' said Stanford professor Michael Longaker, an expert in plastic surgery and regenerative medicine." *See* Ex. 14.

57.    A spokesperson for yet another Plant Stem Cell cosmetics company has "conceded that if you 'put an actual human stem cell on the skin, it wouldn't do anything.'" *See* Ex. 16.

CLASS ACTION COMPLAINT

58.     In an article that appeared in Dermatology Today titled *Short On Evidence*, Dr. Patricia Farris, M.D., a board-certified dermatologist and dermatologie surgeon in Metairie, La. stated, "We don't have proof in human skin yet that when these skincare products are applied to the skin that they can really boost stem cell activity, and, more importantly, make the skin look younger," Dr. Farris says "Most of the research on stem cell products has been done in vitro and needs to be translated to the clinical setting with human subjects." *See* **Exhibit 17**.

59.     In an article titled *Direct-to-Consumer Stem Cell Marketing*, Professor of Biology, Dr. Douglas Sipp has stated, "Charlatans are drawn to frontiers. The scientific frontier of stem cell biology has attracted an unusual amount of dubious business activity, despite the paucity of credible evidence for the efficacy of these cells in the treatment of indications for which they are marketed." **Exhibit 18**.

60.     Sam Most, a facial reconstructive surgeon at Stanford School of Medicine, says "stem-cell-related cosmetic marketing is following the time-tested tactic of climbing aboard the bandwagon of hot topics, from collagen to FDA-approved Botox injections... They don't just sit there on the shelf and last," he says. "To do any good, the ingredients would have to remain stable for weeks or months at room temperature, get past the epidermal layer, go into the right cells, and exert the proper stimulation once reaching their destination." *See* Bryan Nelson, *A Superficial Success*, Nature Reports Stem Cells (Jan.15, 2009), *attached hereto as* **Exhibit 19**.

61.     The totality of  evidence shows that the Plant Stems Cells in cosmeceutical products are not effective at providing anti-aging benefits and thus the Adore Products are likely to mislead reasonable consumers.

   3. Defendants' Claims are Patently False Because There Are No Living Plant Stem Cells in the Adore Products

62.     The Adore Science Manual describes an *in vitro* test using live Plant Stem Cells in a  "new test method, called 'progenitor cell targeting,' [that] made it possible to isolate stem

17

cells, which look the same as other skin cells, from the human epidermis for test purposes. Using this method, these epidermal stem cells are grown in Petri dishes. During this process, each healthy stem cell divides, forming a colony of cells, which is visible to the naked eye and can be counted. Stem cells that have aged and are weakened do not die, but they no longer form colonies. Researchers were thus able to prove that using plant stem cells increases the longevity and the vitality of human skin stem cells." *See* Ex. 13.

63.     Even assuming the above method is credible (it is not), it still fails to account for the fact that ***no actual Living Plant Stem Cells are in the Adore Products***. Defendants' statements are not only likely to mislead reasonable consumers, but rather Defendants' advertising statements are also patently false.

64.     The Mibelle patent for the PhytoCellTec Ingredient describes the production process of the PhytoCellTec ingredient and states that "In order to obtain an extract containing the Whole essence of the cultivated cells, the cells are solubilized by means of liposomes. The main component of this method is the use of high pressure homogenization of the Whole cell broth together With a liposome preparation. The great advantage of this method is its simple and low-cost application." *See* Ex. 4.

65.     In a liposomal preparation intact cells no longer exist.  Cells are disrupted by "homogenization" (application of mechanical force, such as a rotary blender, to a suspension) in the presence of various ingredients used by Mibelle, particularly lecithin, which breaks up cell membranes into small globular fragments called liposomes. Liposomes are much smaller than the extracted cells and are comprised of fragments of the cell membrane folded around microscopic cavities that contain molecules of cellular origin.   Liposomes made from apple callus cultures thus may contain compounds derived from apple stem cells, as well as the chemicals used in their preparation.  PhytoCellTec™ *Malus Domestica* does not, however, contain actual stem cells, as falsely claimed in the ingredient lists of the Adore Products.

66.     The patent notes that "Suitable high pressure homogenizators are commercially available on the market" and specifically notes that destruction of the cell membranes occurs. *See* Ex. 4.

67.    Next, "All preservative agents of natural or synthetic origin allowed for cosmetics, such as e.g. phenoxyethanol, benzoic acid, propionic acid, alcohol or silver chloride, can be used as preservative agents." However, "In order to additionally protect the extract from oxidation, antioxidants, such as e.g. ascorbic acid or tocopherol, may be added." *See* Ex. 4.

68.    Moreover, "the described method allows the addition of still further substances useful in the preparation or cosmetic product. Once all compounds are added, the mixture has to be stirred in order to dissolve the preservative agents and other components. This may be done e.g. by means of a paddle mixer, a homogenization rod or by pumping through static mixing elements." *See* Ex. 4.

69.    Thus, the resulting PhytoCellTec mixture does not resemble Living Plant Stem Cells whatsoever.   Defendants' representations that the Adore Products somehow contain "Plant Stem Cells" that can interact with human stem cells to provide anti-aging benefits is patently false.

**F.  The FDA Warns  PhytoCellTec Product Manufacturers that their Products Are Misbranded Drugs**

70.    On March 1, 2011, the United States Food and Drug Administration sent a "Warning Letter" to the manufacturer of a similar cosmetic product that similarly contained the active ingredient PhytoCellTec and that made similar anti-aging labeling claims. The FDA warned, "Your products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201(p) of the Act [21 U.S.C. § 321(p)]. A new drug may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)].  FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective. " *See* Ex. 5.

71.    On April 20, 2016, the FDA again sent a warning letter to a manufacturer of a cosmetic product that contained the active ingredient PhytoCellTec. According to the FDA, "The claims on your product labels and labeling establish that your 'Ageless Derma Stem Cell

19

and Peptide Anti-Wrinkle Cream' and 'Ageless Derma Anti-Aging Intensive Skin Brightener Cream' products are promoted for uses that cause the products to be drugs under sections 201(g)(1)(B) and/or 201(g)(1)(C) of the Act [21 U.S.C. § 321(g)(1)(B) and/or 321(g)(1)(C)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease and/or are intended to affect the structure or any function of the human body.  As explained further below, introducing or delivering these products for introduction into interstate commerce for such uses violates the Act." *See* Ex. 6.

72.    The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq*. governs the sale of foods, drugs, and cosmetics in the United States. The California counterpart to the FDCA, known as the Sherman Law, incorporates FDCA's regulations. Cal. Health & Safety Code §§ 109925, 110110, 111550. The New Jersey code of regulations also incorporates FDCA regulations.

73.    The FDCA defines cosmetics by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1).

74.    The FDCA defines drugs, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

75.    The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with an anti-dandruff shampoo," which "is a cosmetic because its intended use is to cleanse the hair," and also "is a drug because its intended use is to treat dandruff. . . . Such products must comply with the requirements for both cosmetics and drugs." http://www.fda.gov/cosmetics/guidancecomplianceregulatoryinformation/ucm074201.htm.

CLASS ACTION COMPLAINT

76.    The FDA has further explained that "[f]irms sometimes violate the law by marketing a cosmetic with a drug claim or by marketing a drug as if it were a cosmetic, without adhering to requirements for drugs." *Id*.

77.    Adore makes numerous claims that the Products regenerate the structure and function of human skin, as set forth above herein:

(a)    "Breakthrough Anti-Aging Skin Care via Organic Stem Cells,"

(b)    ". . .enables your skin's own stem cells to self-renew while slowing down the aging process,"

(c)    "Plant stem cells are capable of producing newer skin cells naturally,"

(d)    ". . . uses plant stem cells to regenerate . . . the skin,"

(e)    ". . . protecting your skin's own stem cells and encouraging them to renew skin texture."

(f)    ". . . protects your skin's own stem cells and encourages them to renew texture,"

(g)    ". . . protecting your skin's own stem cells and encouraging them to regenerate healthy texture,"

(h)    ". . . protecting your skin's own stem cells and encouraging them to restore youthful texture,"

(i)    ". . . proven to protect and restore your skin's own stem cells,"

(j)    ". . . smoothes deep lines and wrinkles but also encourages your skin to renew itself,"

(k)    ". . . regenerates the skin's appearance, cell by cell,"

(l)    ". . . we bring anti-aging effects to your own skin cells, increasing your skin's regenerative powers,"

(m)    ". . . proven to revitalize your skin by encouraging its own stem cells to activate new growth," and

(n)    ". . . stimulating regeneration of luminous texture."

21
CLASS ACTION COMPLAINT

## The Adore Products are Both Cosmetics and Drugs

78.     Per the FDA, "[u]nder the law, some of the products commonly referred to as 'personal care products' are cosmetics," including "skin moisturizers, perfumes, lipsticks, fingernail polishes, eye and facial makeup preparations, shampoos, permanent waves, hair colors, some toothpastes, and deodorants."[1] But the Products are also drugs because, as demonstrated by many of its claims and representations set forth above, an intended use of the Products is to affect the structure and function of the human body, including "skin stem cells." Further, FDA has noted in particular that claims that a product acts to "regenerate cells" in the skin  are structure-function claims that classify cosmetics as drugs.[2]

79.     Accordingly, the Products are promoted for uses that cause them to be drugs under 21 U.S.C. § 321(g)(1).

80.     Both a drug and a cosmetic is misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. §§ 352(a) (drug), 362(a) (cosmetic); Cal. Health & Safety Code §§ 111330 (drug), 111730 (cosmetic). In addition, "[i]n determining whether the labeling or advertisement of a food, drug, device, or cosmetic is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account." Cal. Health & Safety Code § 110290.

81.     Because Defendants' "stem cell" and "skin regeneration" claims are false and misleading as noted above, these products are misbranded under the FDCA, California's Sherman Law, and New Jersey regulations.

82.     Furthermore, under the FDCA, drugs must either receive premarket approval by the FDA through a New Drug Application process, or conform to a monograph for a particular drug category, as established by the FDA's Over-the-Counter Drug Review. The Falsely Labeled Products have not received premarket FDA approval, and do not conform to a

---

[1] FDA, *Are all personal care products regulated as cosmetics?* (Last Updated April 11, 2014), *at* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm242716.htm.

[2] FDA, *Is it a cosmetic, a drug, or both? (Or is it Soap?)* http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm (visited July 29, 2016).

CLASS ACTION COMPLAINT

monograph for a drug category. As such, they are unapproved new drugs that are being marketed unlawfully in the United States under 21 U.S.C. § 355(a).

83.    In addition, as both cosmetics and drugs, these products are also misbranded by failing to identify their active ingredients under 21 U.S.C. §§ 362(c) and 701.3(d)(cosmetics) and 21 U.S.C. §§ 352(c) and 201.66(drugs).

**G.    Defendants have Copied the Advertising Ideas and Style of Advertisements of the Premium J'ADORE Product Line by Christian Diore**

84.    Defendants' Adore products are likely to mislead reasonable consumers that the products are connected to or affiliated with the J'Adore product line by Christian Diore.

85.    Dior first introduced a fragrance product under the mark J'ADORE in 1999. Today, the J'ADORE line includes not only perfume products in the form of eau de parfum, eau de toilette and voile de parfum, but also skin care products in the form of soap, shower gel, body milk and body crème.

86.    Dior markets and sells its fragrance and skin care products under the J'ADORE brands throughout the United States, including through Dior boutiques and the DIOR website (http:/www.dior.com), through third-party department stores such Macy's and Bloomingdale's, and through specialty beauty retailers such as Sephora.

87.    As a result of Dior's extensive advertising and sale of goods under the J'ADORE Marks, the marks, when used in connection with fragrance and skin care products, have become exclusively associated with Dior, and consumers recognize fragrance and skin care products bearing the J'ADORE Marks as coming from Dior.

88.    Defendants are targeting the very consumers who are familiar with and who are customers of Dior's products offered under the J'ADORE brands.

89.    Defendants have copied the advertising ideas and style of advertisements of the premium J'ADORE Products to the detriment of Plaintiff and the class members.

90.    Defendants' use of the Adore brand is likely to mislead reasonable consumers, who mistakenly assume that Defendants and the products offered under the Adore brand are associated with or sponsored or approved by Dior. Defendants' use of the Adore brand and

trademarks is likely to continue to cause confusion, as reasonable consumers will assume that Defendants' goods are authorized by, endorsed by, associated with, or are otherwise connected with Dior or its J'ADORE products.

91.    Because Defendants have no affiliation with Dior, their  use of the Adore brand in connection with skin care products and related goods and services is likely to cause confusion, cause mistake, or deceive consumers as to the source, sponsorship or approval of Defendants' goods and services and, specifically, to cause consumers to believe that Defendants' goods and services are sponsored by, affiliated with, approved by or otherwise connected with Dior when such is not the case.

**H. Specific Misrepresentations and Warranties on the Product Packaging**

92.    For purposes of this section, each statement that appears in quotation marks ("") below create affirmative representations about the Products and also create express and implied warranties that were relied on by Plaintiff and the Class members in deciding to purchase the products. The quoted statements are hereinafter referred to as the "Representations and Warranties.

1

**The Adore CELLMAX Superior Facial Thermal Mask**



**CELLMAX Superior Facial Thermal Mask**
Treat your skin to the most advanced anti-aging science available today with CELLMAX Superior Facial Thermal Mask from Adore Organic Innovation. This unique self-heating mask not only smoothes deep lines and wrinkles but also encourages your skin to renew itself. As it gently warms to the touch, the mask prepares your skin to absorb our highest concentration of breakthrough anti-aging Plant Stem Cell formula. We enrich this anti-aging nutrient with extracts of chamomile, linden blossom and other all-natural ingredients to promote smooth skin texture. Vitamin E revives skin's appearance, leaving it fresh, clean and vibrant, while promoting youthful elasticity. All combined, it gives you phenomenal anti-aging action that helps reduce the look of wrinkles in moments while encouraging your skin to respond naturally by amplifying collagen levels that help restore youthful tone.

CLASS ACTION COMPLAINT

93.     The label of the CELLMAX Superior Facial Thermal Mask states the following:

"Treat your skin to the most advanced anti-aging science available today with CELLMAX Superior Facial Thermal Mask from Adore Organic Innovation. This unique self-heating mask not only smoothes deep lines and wrinkles but also encourages your skin to renew itself. As it gently warms to the touch, the mask prepares your skin to absorb our highest concentration of breakthrough anti-aging Plant Stem Cell formula. We enrich this anti-aging nutrient with extracts of chamomile, linden blossom and other all-natural ingredients to promote smooth skin texture. Vitamin E revives skin's appearance, leaving it fresh, clean and vibrant, while promoting youthful elasticity. All combined, it gives you phenomenal anti-aging action that helps reduce the look of wrinkles in moments while encouraging your skin to respond naturally by amplifying collagen levels that help restore youthful tone."

94.     Defendants website also makes the exact same Representations and Warranties about the CELLMAX Superior Facial Thermal Mask as described in the preceding paragraph.

**The Adore CELLMAX Redefining Facial Cream**



CLASS ACTION COMPLAINT

95.     The label for the CELLMAX redefining Facial Cream states the following:

"Formulated with revolutionary CELLMAX, featuring the highest concentration of our exclusive Plant Stem Cell formula, today's most advanced anti-aging biotechnology for skincare. This remarkable formula is proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture. To amplify its age-defying properties, we infuse it with extracts of chamomile, linden blossom and other all-natural flora to regenerate tone and promote smoother appearance. Meanwhile, Allantoin deeply hydrates by binding moisture to dry skin. This phenomenal anti-aging cream helps erase the look of deep wrinkles and restore youthful texture, leaving skin fresher, harmonized and renewed. You'll see results with every application."

96.     Defendants' website also makes the same Representations and Warranties that are quoted in the preceding paragraph concerning the CELLMAX Redefining Facial Cream.

CLASS ACTION COMPLAINT

1

**The Adore CELLMAX Elite Facial Serum**

2



3

4

5

6

7

8

9

10

11

12

13

14    97.    The label for the CELLMAX Elite Facial Serum states the following:

15    "With the passage of time, skin cells suffer damage from aging and

16    environmental elements. This extraordinary facial serum from Adore Organic

17    Innovation helps halt and reverse the aging process using CELLMAX, a

18    breakthrough combination of age-defying active ingredients. It features the

19    highest concentration of our exclusive Plant Stem Cell formula, today's most

      advanced anti-aging biotechnology for skincare. This remarkable formula is

20    proven to restore youthful appearance by protecting your skin's own stem

21    cells and encouraging them to regenerate healthy texture. Its anti-aging action

22    is increased with a special complex of Vitamin C, which regenerates the skin's

23    appearance cell by cell, promoting production of collagen for skin firmness

      and elasticity. This is suspended in a formulation of jojoba seed oil, which

24    makes it readily absorbed to minimize fine lines and wrinkles. Vitamin E

25    revitalizes each layer of your skin, preventing damage and protecting skin

26    from future harm, while Bisabolol soothes the skin and prevents irritation.

27    With each application, this innovative serum promotes skin suppleness and

      works to restore what time and the elements take away"

28

98.     Defendants' website also makes the same Representations and Warranties that are quoted in the preceding paragraph concerning the CELLMAX Elite Facial Serum.

**The CELLMAX Kit.**

99.     Defendants also sell the CELLMAX Thermal Mask, Cream, and Serum in a single kit.



29

CLASS ACTION COMPLAINT

100.   The label of the CELLMAX kit similarly makes the same Representations and Warranties that are described on the packaging for the individual CELLMAX Products.

CLASS ACTION COMPLAINT

101.   Plaintiff read and relied on the above-quoted Representations and Warranties in deciding to purchase the CELLMAX Kit.

**I.   The "Substantially Similar" Adore Organic Innovation Stem Cell Products**

102.   Defendants also manufacture, market, and distribute several other products under the Adore Organic Innovation product line that also contain plant stem cells and that make substantially similar Representations and Warranties regarding the efficacy of the plant stem cells.

103.   Plaintiff alleges that the following products are "substantially similar" to the CELLMAX Products:

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 1 | Essence Facial Detoxifying Cleansing Cream | "The key is our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to renew skin texture." | $99.95 |
| 2 | Essence Facial Toner | "It starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $109.95 |
| 3 | Essence Facial Milk | "The secret is our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $109.95 |
| 4 | Essence Facial Cleanser | "Formulated with Adore Organic Innovation's exclusive plant stem cell formula – featuring Malus Domestica, fruit cell culture (stem cells) that are proven to protect and restore your skins own stem cells." | $89.95 |

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 5 | Snow White Facial Brightening Cream | "It begins with Adore Organic Innovation's exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $495.95 |
| 6 | Dreams Multi Active Night Cream | "It starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $495.95 |
| 7 | Performer Sculpting Neck Serum | "The key is our exclusive Plant Stem Cell formula, which protects your skin's own stem cells and encourages them to renew texture." | $495.95 |
| 8 | Essence Facial Serum | "The key is our exclusive Plant Stem Cell formula, which protects your skin's own stem cells and encourages them to renew texture. We amplify this breakthrough anti-aging nutrient's action with a special compound of Palmitoyl Tetrapeptide, which regenerates the skin's appearance, cell by cell." | $749.95 |
| 9 | Essence Facial Hydrating Cream - normal to oily skin | "It includes our exclusive Plant Stem Cell formula, proven to protect your skin's own stem cells and encouraging them to renew texture." | $199.95 |
| 10 | Essence Facial Hydrating Cream - normal to dry skin | "It includes our exclusive Plant Stem Cell formula, proven to protect your skin's own stem cells and encouraging them to renew texture." | $199.00 |
| 11 | Advanced Firming Eye Cream | "…starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $589.95 |

32

CLASS ACTION COMPLAINT

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 12 | Advanced Firming Eye Serum | "…starts with our exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $595.95 |
| 13 | Skin Tightening Instant Face Lift | "By harnessing the power of these plant stem cells, we bring anti-aging effects to your own skin cells, increasing your skin's regenerative powers." "Within seconds of applying, fine lines and wrinkles disappear, courtesy of the innovative Plant Stem Cell Formula containing organic fruit stem cells . . ." | $1,195.00 |
| 14 | Golden Touch Magnetic Facial Mask | "This pure element triggers profound receptivity in skin cells to the renewing power of our exclusive Plant Stem Cell technology, known to restore youthful appearance by protecting your skin's own stem cells and stimulating regeneration of luminous texture." | $995.00 |
| 15 | Essence Facial Collagen Mask | "Proven to restore youthful appearance, advanced plant stem cells protect your skin's own stem cells and encouraging them to regenerate healthy texture." | $699.95 |
| 16 | Golden Touch 24k Techno-Dermis Facial Mask | "This pure element triggers profound receptivity in skin cells to the renewing power of our exclusive Plant Stem Cell technology, known to restore youthful appearance by protecting your skin's own stem cells and stimulating regeneration of luminous texture." | $3,300.00 |
| 17 | Nourishing Hand and Body Lotion - Original | ". . . with Adore Organic Innovation's organic Plant Stem Cell formula, proven to turn back time by protecting your skin's own stem cells and encouraging them to restore youthful texture." | $34.95 |

33

CLASS ACTION COMPLAINT

| | Product | Substantially Similar Representations and Warranties | List Price |
|---|---|---|---|
| 18 | Nourishing Hand and Body Lotion - Blossom | ". . . Adore Organic Innovation's organic Plant Stem Cell formula, proven to turn back time by protecting your skin's own stem cells and encouraging them to restore youthful texture." | $34.95 |
| 19 | Nature - Intensive Body Butter | "It contains Adore Organic Innovation's exclusive Plant Stem Cell formula, proven to restore youthful appearance by protecting your skin's own stem cells and encouraging them to regenerate healthy texture." | $89.95 |
| 20 | Spirit – Calming Body Butter | "It starts with Adore Organic Innovation's exclusive Plant Stem Cell formula, a powerful concentration proven to revitalize your skin by encouraging its own stem cells to activate new growth." | $89.95 |
| 21 | Spirit - Calming Body Peeling Scrub | "The key is Adore Organic Innovation's exclusive Plant Stem Cell formula, designed to protect and restore your skin's own stem cells . . ." | $79.95 |
| 22 | Nature - Intensive Body Peeling Scrub | "The key is Adore Organic Innovation's exclusive Plant Stem Cell formula, designed to protect and restore your skin's own stem cells . . ." | $79.95 |

104.   Each of these products are substantially similar in that they contain, on information and belief, PhytoCellTec ingredient manufactured by Mibelle Biochemistry of Switzerland.   As set forth above herein, these  products are liposomal preparations derived from apple or grape callus cells and therefore do not contain any plant stem cells even if callus cells are present at the beginning of Mibelle's manufacturing process.

## PLAINTIFF'S EXPERIENCE WITH THE ADORE PRODUCTS

105.   Plaintiff Lisa Mollicone is a resident of New Jersey who purchased the Adore CELLMAX Kit containing the CELLMAX Cream, the CELLMAX Serum, and the CELLMAX Thermal Mask from an Adore Organic Innovations retail store located at 332 Rodeo Drive, Beverly Hills, CA 90210.

106.   Plaintiff Mollicone purchased the CELLMAX Kit in or around June of 2014 while in California and had the products shipped from Defendants' retail store to her home in New Jersey. Plaintiff Mollicone purchased the CELLMAX Kit in reliance on Defendants' Representations and Warranties described above, including that the purported plant stem cells in the products would provide proven anti-aging benefits.

107.   In addition to the Adore CELLMAX kit, Plaintiff Mollicone also purchased substantially similar products, which Plaintiff believes included the "Adore Essence Facial Peeling Gel," the "Adore Dreams Multi-Active Night cream," and the "Adore Essence Facial Detoxifying Cream Cleanser." Plaintiff alleges that Defendants' business records will reveal the exact products that Plaintiff purchased that are substantially similar to the CELLMAX Products.

108.   Plaintiff Mollicone read and relied on statements made on the packaging of the products and on statements that were made on Defendants' website, adorecosmetics.com, which was shown to Plaintiff Mollicone by one of Defendants' sales representative from one of Defendants' in-store computers. Plaintiff believes that the representations made on the Adore website are exactly the same, or substantially similar to, the representations that are made on the product labels.

109.   Plaintiff paid approximately $1,000 total for her purchases of the Adore Products. Plaintiff Mollicone would not have purchased the products at all, or would have paid less for the products, had she known the truth about the Adore products.

110.   Plaintiff Mollicone did not discover the truth about the Defendants' false and misleading advertising scheme described herein until around the time that Plaintiff sent a pre-suit notice letter to Defendants. Plaintiff and the Proposed Class Members are laypersons,

lacked the knowledge and experience to understand how the Products' labels were deceptive or false, and information regarding the false or deceptive advertising was solely within Defendants' possession and control. Thus, the delayed discovery exception postpones accrual of the limitations period for all members of the putative classes.

111. Defendants were constructively and actually aware that the Products were ineffective for their advertised use. Nevertheless, Defendants continued to sell the Adore Products. Therefore, at all relevant times, Defendants had a duty to inform consumers that the Products were not effective at providing the advertised anti-aging benefits, but Defendants knowingly concealed that fact from members of the putative classes herein. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

112. Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for all members of the putative classes until Defendants' unlawful advertising and labeling is corrected.

## DEFENDANTS ARE JOINTLY LIABLE

113. **Agency Allegations:** At all times mentioned in this Complaint, Defendant Sagev was an agent of Defendant Universal Handicraft, Inc. and in doing the acts alleged herein, was acting within the course and scope of such agency. Defendant Universal Handicraft, Inc. had actual and/or constructive knowledge of the acts of Defendant Sagev, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts, and/or retained the benefits of said wrongful acts.

114. **Aiding and Abetting:** At all times mentioned in this complaint, each Defendant knew that each and every other Defendant was engaged in the unlawful acts subject to this complaint. Each Defendant gave substantial assistance or encouragement to the other Defendant who committed the predicate unlawful acts by supplying that Defendant with the means or instrumentalities to commit the unlawful acts, which were substantial factors in causing harm to Plaintiff and the Classes.

CLASS ACTION COMPLAINT

115. **Alter Ego Liability:** Defendant Sagev established Universal Handicraft, Inc. and the Adore Product Line for an illegal purpose: to perpetrate fraud. Defendant Sagev utilizes Universal Handicraft as a vehicle to commit misleading marketing practices as a means of promoting misbranded stem cell products that do not perform as advertised.

116. Defendant Sagev is liable for the conduct of Universal Handicraft, Inc. because Defendant Sagev abused its organizational form as corporation to accomplish fraudulent objects, namely, to fraudulently promote the sale of Adore Products, to conceal the proceeds of those frauds, and to frustrate the ability of victims to obtain redress for the fraud.

117. Defendant Sagev totally dominates and controls Universal Handicraft, Inc. to such an extent that the independence of Universal Handicraft, Inc. is a sham. Defendant Sagev founded Universal Handicraft, Inc. and it is essentially wholly-owned by Defendant Sagev, who also completely dominates the management and control of Defendant Universal Handicraft, Inc. as its president.

118. Defendant Sagev has operated Universal Handicraft, Inc. in a manner that there is such a unity of interest and ownership between Defendant Sagev and Universal Handicraft, Inc. that any sense of independence is non-existent. In fact, Defendant Sagev exercises total operational control and decision-making power over all business activities at Universal Handicraft, including but not limited to product origination and development; product marketing, sales, and promotion; accounting and finance; product distribution; public and media relations; business development and strategy; vendor and third-party relationship; and contract negotiations. Defendant Sagev actively manages and oversees all business operations of Universal Handicraft, Inc. and retains final decision-making power.

119. **Corporate Officer Liability:** In the Ninth Circuit, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (internal quotations omitted); *see also United States v. Reis*, 366 Fed.Appx. 781, 782 (9th Cir. 2010) (citing Restatement (Third) of Agency § 7.01 (2006)); *Coastal Abstract Serv.*,

37

*Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding that a corporate officer or director "cannot hide behind the corporation where he is an actual participant in the tort") (internal quotations omitted)).

120.   Defendant Sagev actually participated in the conduct alleged in this complaint and Plaintiff alleges that Defendant Sagev is personally liable for all unlawful acts described herein because he authorized, directed, or participated in such acts notwithstanding the fact that he acted as an agent of the corporation. For example, Sagev was quoted making the following Representations and Warranties about the Adore Products: "Stem Cells Prevent Aging," "Scientists have found that the stem cells of apples are similar to the stem cells in human beings," "through the use of biotechnology, science is able to utilize these fruit stem cells using them in cosmetics so they are able to penetrate the skin." *See* Emily Lambert, *Adore Organic: Lifting the Face,* SPECIALTY RETAIL REPORT (Fall 2013), *attached hereto as* **Exhibit 20.**

## CLASS ACTION ALLEGATIONS

121.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent multiple classes, or alternative subclasses, that are defined as follows:

**The Nationwide Class**
All persons in the United States who purchased the Adore CELLMAX Products and Substantially Similar Products for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

**The Direct-to-Consumer Class**

All persons in the United States who purchased the Adore CELLMAX Products and Substantially Similar Products directly from Defendants or their actual, apparent, and/or ostensible agents, and not from an independent third party retailer, for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

**The Multi-State Warranty Class**

All persons in California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia who purchased the Adore CELLMAX Products and Substantially Similar Products within those states for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

**The California Class**

All persons who purchased the Adore CELLMAX Products and Substantially Similar Products within California for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

**The New Jersey Class**

All residents of New Jersey who purchased the Adore CELLMAX Products and Substantially Similar Products for personal and household use and not for resale from the time the products entered into the stream of commerce until the date class notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees.

122.   The Classes comprise of many thousands of consumers throughout the nation. The Class is so numerous that joinder of all members of the Class is impracticable. There are questions of law and fact common to the Class. The common questions include:

123.   whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

  (a)  whether Defendants' alleged conduct violates public policy;

  (b)  whether the alleged conduct constitutes violations of the laws asserted herein;

  (c)  whether Defendants engaged in false or misleading advertising;

  (d)  whether plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(e)    whether plaintiff and Class members are entitled to an award of punitive damages; and

(f)    whether plaintiff and Class members are entitled to declaratory and injunctive relief.

124.   Plaintiff's claims are typical of the claims of the proposed Class, and plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests antagonistic to those of the Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation. The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

125.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of plaintiff's claims are manageable.

126.   Unless a class is certified, Defendants will retain monies received as a result of its conduct that was taken from plaintiff and proposed Class members. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

127.   Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I.
### INTENTIONAL FRAUD AND DECIET
### (CAL. CIV. CODE §§ 1709-1711 AND SIMILAR STATE LAWS)
### *-on behalf of-*
### ALL CLASSES

128.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

40

CLASS ACTION COMPLAINT

129.   Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class pursuant to California Civil Code §§ 1709-1711 and the substantially similar laws of all fifty states and the District of Columbia.

130.   There are no material differences in the laws of the fifty states with respect to claims for fraud and deceit as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state laws exist, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws.

131.   Defendants made material representations to Plaintiff and the Class members that the Adore Products are "proven" effective at providing anti-aging benefits and the other Representations and Warranties described in this complaint. However, the Adore Products are not effective at providing the anti-aging benefits because the plant stem cells in the Adore Products are no longer activated when mixed with other substances and added to cosmetics products like the Adore Products.  Moreover, plant stem cells are incapable of interacting with human skin cells in a way that will provide anti-aging benefits.

132.   Defendants have willfully deceived Plaintiff and the class members with the intent to induce Plaintiff and the class members to alter their positions to their injury or risk, and are liable for the damages suffered by Plaintiff and the Class.

133.   Defendants made the Representations and Warranties knowing that the Representations and Warranties were in fact not true.

134.   Alternatively, Defendants made the Representations and Warranties with no reasonable grounds for believing them to be true.

135.   Plaintiff and the Class altered their position in reliance on Defendants' Representations and Warranties in that Plaintiff and the Class would not have purchased the Adore Products, or would have paid much less for the products, had they known that the Representations and Warranties concerning the Adore Products were in fact not true.

136. "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711.

137. Defendants have intended to defraud the public, and the nationwide class defined herein, and are therefore deemed to have defrauded every member of the nationwide class, all of whom were actually misled by Defendants' deceit.

138. Defendants are responsible for their material misrepresentations described above even if they did not intend any particular class member to rely on the misrepresentations because Defendants made the representations to groups of persons and the public at large, intending or reasonably expecting that it would be repeated to Plaintiff and the Class members who are consumers that were actually misled into purchasing the products.

139. Plaintiff and the Class, by purchasing the products, justifiably relied on Defendants' false and misleading Representations and Warranties. If Plaintiff and the class would have known the truth concerning the false representations, they would not have purchased the Adore Products at all, or would have paid much less for the adore products.

140. As a direct and proximate result of Defendants' intentional misrepresentations and deceptive acts, Plaintiff and the members of the Class were induced to pay for the worthless Adore Products. Plaintiff and the Class would not have purchased the Adore Products at all because the Products are being unlawfully sold in violation of the FDCA and unlawful products, like the Adore Products, have a fair market value of $0.00.

141. Alternatively, Plaintiff and the Class allege that the Adore Products are priced at a super-premium in comparison to other cosmetics products and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint. This alternative premium-price measure of damages can be calculated on a uniform class-wide basis and Plaintiff and the class' out-of-pocket loss is the amount of the premium price that the Adore Products command.

142. Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff and Class

members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT II.
### FRAUD BY OMISSIONS / SUPPRESSION OF FACTS
### (CAL. CIV. CODE § 1710(3) AND SIMILAR STATE LAWS)
*-on behalf of-*
### ALL CLASSES

143.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

144.   Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class pursuant to California Civil Code §§ 1710(3) and the substantially similar laws of all fifty states and the District of Columbia.

145.   There are no material differences in the laws of the fifty states with respect to claims for fraud by omission and suppression of facts as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state laws exist, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws.

146.   Defendants failed to disclose material facts about the Adore Products to Plaintiff and the Class members, including the fact that plant stem cells become inactive when added to cosmetics products and that plant stem cells do not interact with human skin cells in any way that would provide the touted anti-aging benefits.

147.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

43
CLASS ACTION COMPLAINT

148.   Defendants have willfully deceived Plaintiff and the class members with the intent to induce Plaintiff and the class members to alter their positions to their injury or risk, and are liable for the damages suffered by Plaintiff and the Class.

149.   As a direct and proximate result of Defendants' material omissions, Plaintiff and the members of the Class were induced to pay for the worthless Adore Products. Plaintiff and the Class would not have purchased the Adore Products at all because the Products are being unlawfully sold in violation of the FDCA and  unlawful products, like the Adore Products, have a fair market value of $0.00.

150.   Alternatively, Plaintiff and the Class allege that the Adore Products are priced at a super-premium in comparison to other cosmetics products and that the premium price is commanded in the marketplace as a direct result of the material omissions described in this complaint. This alternative premium-price measure of damages can be calculated on a uniform class-wide basis and Plaintiff and the class' out-of-pocket loss is the amount of the premium price that the Adore Products command.

151.   Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff and Class members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT III.
### NEGLIGENT MISREPRESENTATIONS
*-on behalf of-*
#### ALL CLASSES

152.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

153.   Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class for Defendants' negligent misrepresentations.

154.   There are no material differences in the laws of the fifty states with respect to claims for negligent misrepresentations as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state laws exist, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws.

155.   Defendants had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Adore Products because Defendants were in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members were justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

156.   During the applicable Class Period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Adore Products, including the purported anti-aging benefits.

157.   Defendants made such false and misleading statements and omissions through a wide range of advertisement medium described herein, with the intent to induce Plaintiff and Class Members to purchase the Products.

158.   Defendants were careless in ascertaining the truth of its representations in that they knew or should have known that Plaintiff and Class Members would not realize the alleged benefits represented by Defendants.

159.   Plaintiff and the Class were unaware of the falsity in Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

160.   Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

CLASS ACTION COMPLAINT

## COUNT IV.

## RECISSION OF PURCHASE CONTRACTS BASED ON FRAUDULENT INDUCEMENT

*-on behalf of-*

### THE DIRECT-TO-CONSUMER CLASS

161.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

162.   Plaintiff brings this Count individually and on behalf of the members of the Direct-to-Consumer Class pursuant to California Civil Code § 1689(b)(1) and the laws of all fifty states and the District of Columbia.

163.   There are no material differences in the laws of the fifty states with respect to the law of recession of contracts based on fraudulent inducement as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state laws exist, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws.

164.   Plaintiff and the class entered into a contract to purchase the Adore Products with the Defendants or Defendants' agents who were acting on behalf of Defendants.

165.   In exchange for receiving the Adore Products, Plaintiff and the class paid Defendants or their agents the purchase price of the Adore Products.

166.   Plaintiff and the class members' consent to enter into the purchase contracts for the Adore Products was obtained through fraud, exercised by or with the connivance of the Defendants.

167.   Defendants procured Plaintiff and the class members' consent to enter into the purchase contracts as a direct and proximate result of the fraudulent representations and material omissions described in the proceeding paragraphs of this complaint.

168.   Defendants' actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 and other similar state laws because Defendants did the following with the intent to deceive Plaintiff and Class members and to induce them to enter into their contracts:

a)   Suggested, as a fact, that the Adore Products provide anti-aging benefits by way of plant stem cells, while knowing that the Adore Products do not provide anti-aging benefits by way of plant stem cells;

b)   Made positive assertions, in a manner not warranted by the information available to Defendants, of that which is not true, though Defendants may have believed it to be true;

c)   The suppression of facts, including the fact that plant stem cells added to cosmetics become inactive;

d)   Other acts described in this complaint that are fitted to deceive.

169.   Because Plaintiff and the class members' consent to enter into the purchase contracts were induced by fraud, the purchase contracts are rescinded.

170.   Plaintiff and the class pray for relief to return the parties to the status quo as if the contract had never been entered into in the first place. Plaintiff therefore prays that the Court award Plaintiff and the class members restitution in the amount of their full purchase price of the Adore Products.  Plaintiff and the Class have nothing of value to return to the Defendants because the Adore products have no resale value because the products are misbranded under the Federal Food, Drug, and Cosmetics Act and cannot lawfully be resold on the market.

CLASS ACTION COMPLAINT

## COUNT V.

## RECISSION OF PURCHASE CONTRACTS BASED ON ILLEGALITY AND VIOLATIONS OF PUBLIC POLICY

*-on behalf of-*

### THE DIRECT-TO-CONSUMER CLASS

171.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

172.   Plaintiff brings this Count individually and on behalf of the members of the Direct-to-Consumer Class pursuant to California Civil Code § 1689(b)(5)-(6) and the laws of all fifty states and the District of Columbia.

173.   There are no material differences in the laws of the fifty states with respect to the law of recession of contracts based on illegality and violations of public policy as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state laws exist, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws.

174.   Plaintiff and the class entered into a contract to purchase the Adore Products with the Defendants or Defendants' agents who were acting on behalf of Defendants.

175.   In exchange for receiving the Adore Products, Plaintiff and the class paid Defendants or their agents the purchase price of the Adore Products.

176.   The Purchase Contracts for the Adore Products were unlawful for causes which do not appear in the terms or conditions of the purchase contracts, and the parties are not equally at fault.

177.   Defendants had superior knowledge of the Adore Products and was required as a seller of the Adore Products to comply with applicable state and federal laws, including the Federal Food, Drug, and Cosmetics Act.

178. The Adore Products are "Misbranded" under the FDCA and therefore Defendants' sales of the Adore Products to Plaintiff and the Class were unlawful and in violation of public policy.

179. The public interest will be prejudiced by permitting the purchase contracts to stand.

180. Plaintiff and the class pray for relief to return the parties to the status quo as if the contract had never been entered into in the first place. Plaintiff therefore prays that the Court award Plaintiff and the class members restitution in the amount of their full purchase price of the Adore Products. Plaintiff and the Class have nothing of value to return to the Defendants because the Adore products have no resale value because the products are misbranded under the Federal Food, Drug, and Cosmetics Act and could not lawfully be resold on the market.

## COUNT VI.
## QUASI-CONTRACT/ UNJUST ENRICHMENT
### *-on behalf of-*
### ALL CLASSES

181. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

182. Because of their wrongful acts and omissions, Defendants charged a higher price for the Adore Products than their true value and Defendants obtained monies that rightfully belongs to Plaintiff and the Class Members.

183. Plaintiff and the class members conferred a benefit on Defendants by purchasing Defendants' Adore Products.

184. Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Class Members. It would be inequitable and unjust for Defendants to retain these unjustly obtained gains.

185. Plaintiff and the Class therefore seek an order requiring Defendants to make restitution to them in the amount of the full purchase price they paid for the products, or

49

alternatively, the average retail price of the products, or alternatively, the profits Defendants gained as a result of their sales of the Products.

## COUNT VII.

## ACTION FOR DECLARATORY RELIEF PURSUANT TO THE FEDERAL DECLARATORY JUDGMENT ACT
## (28 U.S.C. §§ 2201-2202)
### -on behalf of-
### THE DIRECT-TO-CONSUMER CLASS

186.    Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

187.    Plaintiff brings this Count individually and on behalf of the members of the Direct-to-Consumer Class pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

188.    There is a substantial and continuing controversy between the proposed class members and Defendants. A declaration of rights is both necessary and appropriate to interpret the rights and legal relations of the parties with respect to whether the purchase contracts for the Adore Products are legally valid.

189.    Plaintiff and the Class have suffered a concrete and redressable injury because Defendants continue to retain the purchase monies expended on the Adore Products even though the purchase contracts for the Adore Products are legally void or voidable.

190.    The harm suffered by Plaintiff and the Class Members can be redressed through the requested relief. A Declaration of the rights and relations of the parties with respect to the purchase contracts of the Adore Products would fully dispose of the claims brought on behalf of the direct-to-consumer class because if the purchase contracts are found to be void or voidable, then Plaintiff and the class members would be entitled to full restitution of their purchase prices.

191.    Plaintiff and the Class Members thus seek a Judgment that declares the following:

a) There are no enforceable purchase contracts between Plaintiff and the Class members on the one hand, and Defendants on the other, because the consent of Plaintiff and the Class Members to enter into any agreements for purchase of the Adore Products was induced by fraud.

b) There are no enforceable purchase contracts between Plaintiff and the Class members on the one hand, and Defendants on the other, because Defendants' marketing and sales of the Adore Products was unlawful under the Federal Food, Drug, and Cosmetics Act and corresponding state laws like California's Sherman Law;

c) There are no enforceable purchase contracts between Plaintiff and the Class members on the one hand, and Defendants on the other, because  Defendants' sales of the Adore Products  violates public policy and the public interest would be prejudiced if the contracts were allow to stand;

d) Defendants have been unjustly enriched by retaining Plaintiff and the class members' purchase monies given in exchange for the Adore Products.

192.   If a declaration of rights is made in favor of Plaintiff and the Class Members, then Plaintiff and the Class Members further pray for an Order awarding "further relief" pursuant to 28 U.S.C. § 2202 in the form of restitution of purchase prices and all injunctive relief necessary to prevent further fraudulent sales of the Adore Products.

## COUNT VIII.

### BREACH OF EXPRESS WARRANTIES

*-on behalf of-*

#### THE MULTI-STATE WARRANTY CLASS AND THE CALIFORNIA AND NEW JERSEY CLASSES

193.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

194.   Plaintiff brings this Count individually and on behalf of the members of the Multi-State Consumer Warranty Class, or alternatively, the California Warranty Class for Defendants' Breach of Express Warranties.

195.   There is no material difference in the law of express warranty in the following states: California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia.

51

196. In connection with selling the Adore Products to Plaintiff and the Class members, Defendants made express written warranties that are described in the proceeding sections of this complaint and defined as the "Warranties and Representations."

197. Defendants' affirmations of fact and promises made to Plaintiff and the Class on Adore Labels and on the Adore Website, became part of the basis of the bargain between Defendants on the one hand, and Plaintiff and the Class Members on the other, thereby creating express warranties that Adore would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

198. Defendants breached their express warranties because the Adore Products are not in fact "proven" to reverse the signs of aging by way of plant stem cells. In short, Adore does not perform as expressly warranted.

199. Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased Adore if they had known the true facts; (b) they paid for Adore due to the mislabeling; and (c) Adore did not have the quality, effectiveness, or value as promised. As a result, Plaintiff and the Class have been damaged.

## COUNT IX.
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### -on behalf of-
### THE CALIFORNIA AND NEW JERSEY CLASSES

200. Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

201. Plaintiff brings this Count individually and on behalf of the members of the California Warranty Class for Defendants' Breach of the Implied Warranty of Merchantability.

202. Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the Adore Products would provide anti-aging benefits by way of the plant stem cells purportedly contained within the products.

203. Defendants, through their acts and omissions set forth herein, in their sale, marketing, and promotion of Adore Products, made implied representations to Plaintiff and the Class that their Adore Products were effective at reversing the signs of aging by way of the plant stem cells purportedly contained within the products.

204. Defendants' Products were entirely useless for their ordinary purpose of preventing the signs of aging through stem cell technology. The Products were not of fair and average quality within Defendants' description. The Products were also not labeled as Defendants' Adore Products were entirely useless for their ordinary purpose of preventing the signs of aging. The Products were not of fair and average quality within Defendants' description. The Products were also not labeled as required because the Product packaging contains numerous misrepresentations. The Products do not conform with the promises on their labels.

205. Defendants breached their implied warranties because the Adore Products did not and cannot prevent or reduce the signs of aging through plant stem cells. As a result of Defendants' conduct, Plaintiff and the Class did not receive the goods as impliedly warranted by Defendants to be merchantable or fit for the purpose they were sold.

206. Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

CLASS ACTION COMPLAINT

## COUNT X.

## VIOLATIONS OF THE FEDERAL MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. §§ 2301, *et seq.*)

*-on behalf of-*

THE MULTI-STATE WARRANTY CLASS AND THE CALIFORNIA AND NEW JERSEY CLASSES

207.    Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

208.    The Adore Products are consumer products as defined in 15 U.S.C. § 2301(1).

209.    Plaintiff and the Class Members are consumers as defined in 15 U.S.C. § 2301(3).

210.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

211.    In connection with the sale of the Adore Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), including the "Warranties and Representations" described in the proceeding paragraphs of this complaint.

212.    Defendants breached the written warranties because each of the express warranties is provably false and misleading. The plant stem cells in the Adore Products do not reverse the signs of aging.

213.    By reason of Defendants' breach of the express written warranties involving the Adore Products enumerated above, Defendants have violated the statutory rights due Plaintiff and the Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and the Class Members.

214.    Plaintiff and the Class Members were injured as direct and proximate result of Defendants' breach because they would not have purchased the Products if they had known the truth about them.

215.    Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breaches of written warranties, which damages

constitute the full purchase price of the Products. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class for and in connection with the commencement and prosecution of this action.

216.   Prior to filing this action, Plaintiff. Mollicone, by and through her counsel, provided Defendants with written notice of her claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendants that she was acting on behalf of a Class defined as all persons in the United States who purchased Adore Products.

## COUNT XI.
## VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *et seq.*
*-on behalf of-*
### THE CALIFORNIA CLASS

217.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

218.   Plaintiff brings this Count individually and on behalf of the California Class.

219.   Plaintiff and the class members are consumers who purchased the anti-aging Products for personal, family, or household purposes. Accordingly, Plaintiff and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Adore Products.

220.   At all relevant times, Adore Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

221.   At all relevant times, Defendants were "persons" as that term is defined in Civ. Code § 1761(c).

222.   At all relevant times, Plaintiff's purchase of Adore Products, and the purchases of other Class and Subclass members, constituted "transactions" as that term is defined in

Cal. Civ. Code § 1761(e). Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

223.   The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Adore Products to Plaintiff and the Class. Defendants' practices, acts, policies, and course of conduct violated the CLRA §1750 et seq. as described above.

224.   Defendants represented that Adore Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

225.   Defendants represented that the Products were of a particular standard, quality, and grade, when they were of another, in violation of California Civil Code § 1770(a)(7). Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Adore Products were effective at preventing or reducing the signs of aging.

226.   Defendants represented that Adore Products were of a particular standard or quality when Defendants were aware that they were of another in violation of § 1770(a)(7) of the CLRA.

227.   Defendants advertised Adore Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA. Defendants did not intend to sell the Adore Products as advertised because they knew that the Products would not effectively prevent the signs of aging. Defendants knew that the Products' so-called active ingredients are ineffective.

228.   Defendants have passed off the Adore Products as those of another in violation of § 1770(a)(1) of the CLRA by representing that the Adore Products are affiliated, connected with, or have the approval of Diore.

229.   Defendants have misrepresented the source, sponsorship, or approval of the Adore Products by representing that the products are sourced by, have the sponsorship or approval of Diore.

230.   Defendants have made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions by claiming that the actual retail prices for

the products are in the amounts stated on Defendants' website when really the products are uniformly sold at lower prices. See Ex. 1.

231. Plaintiff and the California Class Members suffered injuries caused by Defendants' misrepresentations because: (a) Plaintiff and the Class Members would not have purchased Adore Products if they had known the true facts; (b) Plaintiff and the Class paid a price for the Products due to the mislabeling of the Adore Products; and (c) Adore Products did not have the level of quality, effectiveness, or value as promised.

232. Prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). A copy of Plaintiff's letter is attached as Exhibit 21. In April 2016, Plaintiff sent Defendants a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770. Defendants were further advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff would bring an action for damages and other relief pursuant to the CLRA. On April 28, 2016, Defendants received the letter.

233. Plaintiff seeks damages, restitution, injunctive relief, and Attorneys' fees and costs for Defendants' violations of the CLRA.

## COUNT XII.
## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)
*-on behalf of-*
### THE CALIFORNIA CLASS

234. Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

235. Plaintiff brings this Count on behalf of the California Class.

236. California's FAL (Bus. & Prof. Code §§17500, et seq.) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services,

57

professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

237.   Throughout the Class Period, Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of Adore Products, as described above.

238.   Defendants knew or should have known through the exercise of reasonable care that their statements were untrue and misleading.

239.   Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

240.   As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiff and the Class would not have purchased Adore Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

241.   Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers. Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT XIII.

### VIOLATIONS OF CALIFORNIA's UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
### *-on behalf of-*
### THE CALIFORNIA CLASS

242.    Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

243.    The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include ***unlawful***, ***unfair*** or ***fraudulent*** business practices and unfair deceptive, untrue or misleading advertising ...." The UCL also provides for injunctive relief and restitution for UCL violations.

### ***Unlawful***

244.    "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

245.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

246.    Defendants violated the "unlawful prong" by violating the CLRA, the FAL, the California Sherman Law, the Magnuson-Moss Warranty Act, as well as by breaching express and implied warranties as described herein.

247.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unlawful prong" violation because: (a) Plaintiff and the Class would not have purchased Adore Products if they had known the true facts regarding

the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

248.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### ***Fraudulent***

249.    The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

250.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL because Defendants represented that Adore Products were proven to provide anti-aging benefits.

251.    Plaintiff and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Plant Stem Cell Products, and they acted reasonably when they purchased Defendants' Products based on their belief that Defendants' representations were true.

252.    Defendants knew or should have known, through the exercise of reasonable care, that their representations about the Products were untrue and misleading.

253.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "fraudulent prong" violation because: (a) Plaintiff and the Class would not have purchased Adore Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and the Class paid a price due to

the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

254.   Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### ***Unfair***

255.   The UCL, Bus. & Prof. Code § 17200 et seq., provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

256.   Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

257.   Defendants' practices as described herein are of no benefit to consumers who are tricked into paying exorbitant prices for an ordinary wrinkle cream.

258.   As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unfair prong" violation because: (a) Plaintiff and the Class would not have purchased Adore Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Adore Products; and (c) Adore Products did not have the promised quality, effectiveness, or value.

CLASS ACTION COMPLAINT

259.   Pursuant to Bus. & Prof. Code §17203, Plaintiff, and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## COUNT XIV.
### VIOLATIONS OF NEW JERSEY'S CONSUMER FRAUD ACT
### N.J.S.A. § 56:8-1, *et seq.*
*-on behalf of-*
#### THE NEW JERSEY CLASS

260.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

261.   Plaintiff brings this claim on behalf of each member of theNew Jersey Class.

262.   Defendants, by selling, distributing, designing, packaging and marketing the Adore Products, as set forth above, engaged in deceptive practices and acts in violation of the New Jersey Consumer Fraud Act.

263.   Defendants used unconscionable commercial practices, deception, false pretense, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of material facts with intent that others, including Plaintiff and the New Jersey class members, would rely upon such concealment, suppression or omission, in connection with the sale and advertisement of the Adore Products, which are "merchandise" under the New Jersey Consumer Fraud Act.

264.   Defendants' misrepresentations and false, deceptive, and misleading statements with respect to the Adore Products, as described above, constitute deceptive acts or practices

265.   Defendants engaged in an unconscionable commercial practice because Defendants knew the contents and ingredients in the Adore Products, and therefore

CLASS ACTION COMPLAINT

Defendants' sale and labeling of the Adore Products demonstrates a lack of good faith, and disregard for honesty and fair dealing.

266.    Defendants engaged in acts of omission, including, but not limited to knowing concealment, suppression and omission of material facts, including the true composition of and ingredients in the Adore Products. Defendants knew the contents and ingredients in each of the Adore Products and knew the Adore Products were manufactured without any active Plant Stem Cells.  Nonetheless, Defendants knowingly concealed, suppressed, and/or omitted the true contents of the Adore Products, given consumers' desire for breakthrough anti-aging ingredients.  Defendants intended that consumers rely upon their incomplete, misleading representations in purchasing the products.

267.    Plaintiff and the class suffered an ascertainable loss caused by Defendants' misrepresentations, unconscionable commercial practices, and knowing omissions because (a) they would not have purchased Adore Products on the same terms if the true facts concerning their actual composition had been known; and (b) they paid a price premium due to the misrepresentation of the Adore Products.

268.    Based on the foregoing, Plaintiff and the New Jersey class members are entitled to all remedies available pursuant to the New Jersey Consumer Fraud Act, including, but not limited to actual damages, treble damages, disgorgement of Defendants' profits derived from its unlawful activities, injunctive relief, attorneys' fees and other reasonable costs.

## COUNT XV.
### VIOLATIONS OF THE NEW JERSEY TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT "TCCWNA,"
#### NEW JERSEY STAT. §§ 56:12-14 TO 56:12-18
*-on behalf of-*
#### THE NEW JERSEY CLASS

269.    Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

270.    New Jersey Stat. §§ 56:12-15 (the "TCCWNA") provides:

No seller . . . shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

271. The labels and marketing materials for the Adore Products are written consumer warranties, notices, and/or signs that are offered, given, and/or displayed to consumers and prospective consumers subject to the TCCWNA.

272. Plaintiff and the New Jersey Class are "consumer[s] or prospective consumer[s]" within the meaning of N.J.S.A. § 56:12-15.

273. Defendants are "sellers" within the meaning of N.J.S.A. § 56:12-15.

274. The right of consumers to truthful and accurate statements on the labels and marketing materials for the Adore Products, as well as the right to avoid deception caused by false and misleading statements on such labels and marketing materials, are "clearly established legal rights" under N.J.S.A. § 56:8-2.

275. The responsibility of a seller to refrain from the employment of any unconscionable commercial practice, deception, fraud, false pretense, and/or misrepresentation, and to refrain from the knowing concealment, suppression, and/or omission of any material fact with intent that others rely upon such concealment, suppression, and/or omission in connection with the sale of merchandise, and to refrain from selling products with labels that make false statements about the products, is clearly established under N.J.S.A. § 56:8-2.

276. Defendants violated the TCCWNA by implying that the Adore Products provide breakthrough anti-aging benefits by way of Plant Stem Cells, when in fact, the Adore Products are no better than generic cosmetics products that do not contain purported Plant Stem Cells and that are not priced at a premium.

64

277.   Pursuant to N.J.S.A. § 56:12-17, Defendants are liable to Plaintiff and the New Jersey Class for civil penalties or for actual damages, or both, at the election of the consumer. In addition, Plaintiff and the New Jersey Class are entitled to reimbursement for all reasonable attorneys' fees and court costs incurred as a result of bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against all defendants as to each and every cause of action, including:

A.   An order certifying this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3);

B.   An order maintaining this action as a class action and/or an order maintaining a particular issue class action pursuant to Federal Rule of Civil Procedure 23(c)(4);

C.   An order requiring defendants to bear the costs of class notice;

D.   An order appointing Plaintiff Mollicone as the class representative and the Law Offices of Ronald A. Marron as Class Counsel.

E.   An order awarding restitution in the amount of the purchase price paid by the class members for the Adore Products;

F.   An order awarding disgorgement of Defendants' profits that were obtained from its ill-gotten gains in connection with its sales of the Adore Products to Plaintiff and the class members;

G.   An order for rescission of purchase contacts and restitution for Defendants' unjust enrichment;

H.   A declaration of the rights and relations of the parties with respect to the purchase contracts and all further relief necessary to enforce the declaration;

I.   An order for injunctive relief requiring Defendants to conduct a corrective advertising campaign;

J.      An order for injunctive relief prohibiting Defendants from continuing to advertise and label the Adore Products with the Representations and Warranties described herein;

K.      An order for the accounting of Defendants' revenues, profits, and assets;

L.      An order imposing a constructive trust or an equitable lien;

M.      An award for punitive damages;

N.      An order awarding attorneys' fees and costs; and

O.      An order providing for all other such further relief as may be just and proper.

## JURY DEMAND

Plaintiff and the proposed class members hereby demand a trial by jury on all issues so triable.

Dated: September 29, 2016

/s Ronald A. Marron
Ronald A. Marron
ron@consumersadvocates.com

**THE LAW OFFICES OF
RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Counsel for Plaintiff and the Proposed
Classes***

CLASS ACTION COMPLAINT

| Exhibit | Description | Number |
|---------|-------------|--------|
| 1. | Screenshots from the Adore Website showing the Products. | 1-4 |
| 2. | Webpage from the Mibelle Website describing the Phytocelltec Plant Stem Cells. | 5-11 |
| 3. | Article titled *Could the extract from a rare Swiss apple REALLY get rid of your wrinkles?* | 12-16 |
| 4. | Mibelle's Patent Application for the Phytocelltec Plant Stem Cell ingredient. | 17-30 |
| 5. | FDA Warning Letter to Crescent Health Center, Inc. dated April 20, 2016 | 30-34 |
| 6. | FDA Warning Letter to Jaba Labs dated March 11, 2011. | 35-37 |
| 7. | Webpage from the Office of the Secretary of State for the State of Florida detailing Universal Handicraft, Inc.'s Corporate Entity Registration. | 38-39 |
| 8. | Articles of Incorporation for Universal Handicraft, Inc. showing that Defendant Segev was the incorporator of the corporation and a director. | 40-41 |

CLASS ACTION COMPLAINT

| 9. | Article titled *The Deep Sea and Its Many Treasures* stating that "Shay Sabag, president of Deep Sea Cosmetics, in Miami, FL, not only launched a trend; he transformed it into a specialty retail mainstay." | 42-51 |
| --- | --- | --- |
| 10. | Trademark registration documents for the mark ADORE ORGANIC INNOVATION | 52-99 |
| 11. | Article titled *Adore Cosmetics Opens New Store in Boston/Cambridge Area* detailing Adore's retail operations and calling the company a "leading purveyor of organic skin care and beauty products." | 100-102 |
| 12. | Screenshot of the "About the Brand" webpage captured from the Adore Website. | 103 |
| 13. | The "Adore Catalog Technology Section" captured from the Adore website. | 104-109 |
| 14. | USA Today article titled "Boomers will be spending billions to counter aging" dated August 22, 2011. | 110-114 |
| 15. | Article from EMBO reports Volume 9, Number 11 (2008) titled "Healing beauty? More biotechnology cosmetic products that claim drug-like properties reach the market" | 115-119 |

3

| 16. | USA Today article titled "Stem cell lotions: Cutting edge or pure hype?" | 120-121 |
| 17. | Article from the Dermatology Times titled *Short on evidence* stating that "Stem cell cosmeceuticals do not actually contain stem cells." | 122-125 |
| 18. | Journal Article from Stem Cells Translational Medicine titled *Direct-to-Consumer Stem Cell Marketing and Regulatory Response*. | 126-128 |
| 19. | Article titled "*A superficial success*: The promise of stem cells in reconstructive surgery has prompted a surge in rejuvenating skin creams that claim to stimulate them. But commercial success says nothing about efficacy." | 129-134 |
| 20. | Article from the Fall 2013 edition of Specialty Retail Report  titled *Adore Organic: Lifting the Face*. | 135-143 |
| 21. | Plaintiff's letter dated April 25, 2016 providing Defendants with notice of breaches of warranties and violations of the Consumer Legal Remedies Act. | N/A |

CLASS ACTION COMPLAINT